IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| AMARIT DHANOWA,<br><br>　　　　Petitioner,<br><br>　　vs.<br><br>JOHN MARSHALL, Warden,<br><br>　　　　Respondent. | No. C 09-1280 JSW (PR)<br><br>**ORDER DENYING PETITION FOR WRIT OF HABEAS CORPUS AND CERTIFICATE OF APPEALABILITY** |

## INTRODUCTION

This is a habeas corpus case filed pro se by a state prisoner pursuant to 28 U.S.C. § 2254. The court ordered respondent to show cause why the writ should not be granted. Respondent has filed an answer and a memorandum of points and authorities in support of it, and has lodged exhibits with the court. Petitioner has responded with a traverse. For the reasons set out below, the petition is denied.

## PROCEDURAL BACKGROUND

In 2005, a jury in Santa Clara County Superior Court convicted Petitioner of willful discharge of a firearm with an enhancement for personal use of a dangerous weapon, and possession of a firearm by a felon. (Ex. A at 312-314.)[1] He was sentenced to nine years in state prison. (Ex. A at 413-414.) His conviction and sentence were affirmed by the California Court of Appeal and the California Supreme Court denied his petition for review. (Ex. E, G.) His state habeas petitions were denied. (Ex. I, K, M.)

---

[1]Citations to "Ex." are to the record lodged with the Court by the Attorney General.

# **FACTUAL BACKGROUND**

The facts underlying the charged offense, as found by the California Court of Appeal, are summarized in relevant part, as follows:

> The dispute centered on the type of device defendant used to ward off a group of unruly teenagers. The prosecution theorized that defendant unlawfully brandished and discharged a handgun, whereas defendant contended that he brandished a cigarette lighter in the shape of a gun.
>
> The case was called for trial on June 2, 2004. The prosecution's evidence showed that on the night of August 22, 2003, about 12 teenagers, some of them intoxicated, were loitering in a group outside a liquor store in which defendant was working. Defendant believed some girls in the group had shoplifted and confronted them. Some in the group responded by throwing "Pop Rocks", a type of cap or similar noisy amusement sold by ice cream vendors, at defendant. Defendant brandished a handgun and fired it in the air, warning the rowdy crowd not to interfere with him, and returned to the store.
>
> The teenagers were the main witnesses against defendant at trial. In addition to their testimony about defendant and the gun, one testified that he heard a shell casing land after defendant fired, looked over, and saw it lying on the ground. Although police did not recover the gun, they did recover a shell casing on a nearby sidewalk.
>
> The jury heard evidence favoring defendant. Defendant told a responding police officer that someone in the group had thrown a firecracker at him and he responded by brandishing a cigarette lighter that resembled a small gun, which he took from a display case in his store and replaced following the confrontation. The other clerk on duty in the store that night did not see defendant with a gun before, during, or after the incident, and defendant's behavior was normal.
>
> The jury also learned that prosecution witnesses had offered accounts of the incident that varied from their testimony in court. One of the teenagers had given the police inconsistent accounts, stating at one point that he had seen only a cigarette lighter, not a gun. At trial the witness testified that, as he had originally told the police, he had in fact seen a gun. He had changed his story at one point to absolve defendant because he was afraid to tell the truth and because by supplying an account favoring defendant he hoped to get free liquor from defendant's store. Another prosecution witness had testified in a prior proceeding that he heard fireworks, not a gun, that night. At trial he testified that he had perjured himself because he was afraid to tell the truth at the prior proceeding.
>
> Countering the evidence favoring defendant, a surveillance videotape did not show defendant replacing a gun-shaped cigarette lighter in the display case after the incident. Nor did another store attendant see defendant do so. The responding police officer searched for firecracker evidence in the vicinity and could not find any.

*People v. Dhanowa*, No. H029650, 2007 WL 927782 (Cal. Ct. App. March 29, 2007) at

*1-2 (footnotes omitted).

## STANDARD OF REVIEW

A district court may not grant a petition challenging a state conviction or sentence on the basis of a claim that was reviewed on the merits in state court unless the state court's adjudication of the claim: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d). The first prong applies both to questions of law and to mixed questions of law and fact, *Williams (Terry) v. Taylor*, 529 U.S. 362, 407-09 (2000), while the second prong applies to decisions based on factual determinations, *Miller-El v. Cockrell*, 537 U.S. 322, 340 (2003).

A state court decision is "contrary to" Supreme Court authority, that is, falls under the first clause of § 2254(d)(1), only if "the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams (Terry)*, 529 U.S. at 412-13. A state court decision is an "unreasonable application of" Supreme Court authority, falling under the second clause of § 2254(d)(1), if it correctly identifies the governing legal principle from the Supreme Court's decisions but "unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. The federal court on habeas review may not issue the writ "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411. Rather, the application must be "objectively unreasonable" to support granting the writ. *Id.* at 409.

Under 28 U.S.C. § 2254(d)(2), a state court decision "based on a factual determination will not be overturned on factual grounds unless objectively unreasonable

3

in light of the evidence presented in the state-court proceeding." *Miller-El*, 537 U.S. 322 at 340; *see also Torres v. Prunty*, 223 F.3d 1103, 1107 (9th Cir. 2000).

When there is no reasoned opinion from the highest state court to consider the petitioner's claims, the court looks to the last reasoned opinion. *See Ylst v. Nunnemaker*, 501 U.S. 797, 801-06 (1991); *Shackleford v. Hubbard*, 234 F.3d 1072, 1079, n. 2 (9th Cir.2000).

## **DISCUSSION**

As grounds for habeas relief, Petitioner asserts that: (1) the trial court failed to instruct the jury sua sponte on self-defense and defense of others; (2) the trial court erroneously instructed the jury on admissions; (3) Petitioner's statement to the police was obtained in violation of his *Miranda*[2] rights; (4) Petitioner received ineffective assistance of counsel in the trial and appellate courts.

### **I.    Omitted Jury Instructions**

Petitioner claims that the trial court erroneously failed to instruct the jury sua sponte on self-defense and defense of others.  Specifically, Petitioner argues that the trial

---

[2] *Miranda v. Arizona*, 384 U.S. 436, 473-74 (1966).

court should have instructed the jury pursuant to CALJIC Nos. 9.03.3[3], 5.51[4], and 5.43[5]. (Traverse at 26, 29-30.)

A state trial court's failure to give an instruction does not alone raise a ground cognizable in a federal habeas corpus proceeding. *See Dunckhurst v. Deeds*, 859 F.2d 110, 114 (9th Cir. 1988). The error must so infect the trial that the defendant was deprived of the fair trial guaranteed by the Fourteenth Amendment. *See id.* Due process requires that "'criminal defendants be afforded a meaningful opportunity to present a complete defense.'" *Clark v. Brown*, 450 F.3d 898, 904 (9th Cir. 2006) (quoting *California v. Trombetta*, 467 U.S. 479, 485 (1984)). Therefore, a criminal defendant is entitled to adequate instructions on the defense theory of the case. *See Conde v. Henry*, 198 F.3d 734, 739 (9th Cir. 2000). A defendant is entitled to an instruction on his defense theory only "if the theory is legally cognizable and there is evidence upon which the jury could rationally find for the defendant." *United States v. Boulware*, 558 F.3d 971, 974

---

[3] "[The willful discharge of a firearm is not unlawful when done in lawful [self-defense] [or] [defense of others]. The People have the burden to prove that the discharge of the firearm was not un lawful [self-defense] [or] [defense of others]. If you have a reasonable doubt that the discharge of the firearm was unlawful, you must find the defendant not guilty.]"

[4] "Actual danger is not necessary to justify self-defense. If one is confronted by the appearance of danger which arouses in [his] [her] mind, as a reasonable person, an actual belief and fear that [he] [she] is about to suffer bodily injury, and if a reasonable person in a like situation, seeing and knowing the same facts, would be justified in believing [himself] [herself] in like danger, and if that individual so confronted acts in self-defense upon these appearances and from that fear and actual beliefs, the person's right of self-defense is the same whether the danger is real or merely apparent."

[5] "When conditions are present which, under the law, justify a person in using force in defense of property, that person may use that degree and extent of force as would appear to a reasonable person, placed in the same position, and seeing and knowing what the resisting person then sees and knows, to be reasonably necessary to prevent imminent injury threatened to the property. Any use of force beyond that limit is excessive and unjustified, and anyone using excessive force is legally responsible for the consequences thereof."

(9th Cir. 2009) (internal quotations omitted).

The California Court of Appeal reasoned that the trial court did not err in failing to instruct sua sponte on self-defense and defense of others because those instructions would have been contrary to defendant's theory of the case, i.e., that he brandished a cigarette lighter in the shape of a handgun, not an actual gun. *See Dhanowa*, 2007 WL 927782 at *2. The appellate court relied on *People v. Dominguez* for the proposition that "in the absence of a request for a particular instruction, a trial court's obligation to instruct on a particular defense arises 'only if it appears that the defendant is relying on such a defense, or if there is substantial evidence supportive of such a defense and the defense is not inconsistent with the defendant's theory of the case.'" *Id*. (citing 39 Cal.4th 1141, 1148 (2006)).

The California Court of Appeal's reasoning is sound. Under federal law, a criminal defendant is entitled to a defense instruction on the defense theory of the case. *See Conde*, 198 F.3d at 739. Petitioner argues that there is sufficient evidence that he was defending himself against a group of intoxicated teenagers that threw objects at him. (Traverse at 26, 32). However, the instructions on self-defense and defense of others are not consistent with his theory of his case. Each of these defense theories requires that the defendant used actual force to defend himself, whereas Petitioner's theory is that he did not use any force because he only brandished a cigarette lighter. CALJIC No. 9.03.3 specifically contradicts Petitioner's theory that he brandished a cigarette lighter because it assumes that a firearm was actually used.

Petitioner did not meet his "heavy burden" to show that the trial court's failure to instruct on self-defense and defense of others deprived him of the fair trial guaranteed by due process. *See Villafuerte*, 111 F.3d at 624. The state courts' rejection of this claim was neither contrary to nor an unreasonable application of federal law, and Petitioner is not entitled to federal habeas relief on this claim.

6

## II. <u>Jury Instruction On Admissions</u>

Petitioner claims that the trial court erred in instructing the jury pursuant to CALJIC No. 2.71 regarding party admissions. CALJIC No. 2.71 defines an admission as "a statement made by the defendant which does not by itself acknowledge his guilt of the crimes for which the defendant is on trial, but which statement tends to prove his guilt when considered with the rest of the evidence." The instruction further states that "[the jurors] are the exclusive judges as to whether the defendant made an admission, and if so, whether that statement is true in whole or in part. Evidence of an oral admission of the defendant not made in court should be viewed with caution."

To obtain federal collateral relief for errors in the jury charge, a petitioner must show that the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process. *See Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991). The instruction may not be judged in artificial isolation, but must be considered in the context of the instructions as a whole and the trial record. *Id.* In order to show a due process violation, a petitioner must show a "reasonable likelihood" that the jury applied the instruction in a way that violates the Constitution. *Waddington v. Sarausad*, 129 S. Ct. 823, 831 (2009). A determination that there is a reasonable likelihood that the jury has applied the challenged instruction in a way that violates the Constitution establishes only that a due process violation has occurred. *Calderon v. Coleman*, 525 U.S. 141, 146 (1998).

Petitioner argues that the instruction to jurors to view evidence of out of court oral admissions with caution might have been improperly interpreted by the jury as implying that there had been an admission or confession by Petitioner that was not introduced into evidence. (Traverse at 38.) Petitioner also argues that the jury might have construed his statement to the police that he brandished a cigarette lighter as an admission, and then viewed that statement with caution. (*Id*. at 36.) The California Court of Appeal held that

7

1  the trial court was correct to give the instruction.  The appellate court found "no
2  reasonable likelihood of the misinterpretation that defendant urges could have occurred."
3  *Dhanowa*, 2007 WL 927782 at *5.

4  The appellate court's decision was sound.  Although Petitioner argues that the jury
5  might have improperly interpreted the instruction as implying that he must have said
6  something that was unfavorable to him, there is no language in CALJIC No. 2.71 that
7  mandates that jurors find an admission at all.  Rather, the instruction gives jurors the
8  opportunity to decide if Petitioner made an admission.  Moreover, the instruction provides
9  the jurors with the legal definition of admission to avoid confusion.  Therefore,
10 Petitioner's argument that the jury may have used a dictionary definition to interpret the
11 meaning of an admission is invalid.  Petitioner is also concerned that the jury viewed his
12 statement to the arresting officer that he brandished a cigarette lighter rather than a gun as
13 an admission.  (*See* Ex. B at 293, 449; Traverse at 36.)  This statement would not be
14 viewed as an admission because, as Petitioner concedes, it was not an admission of guilt
15 but a denial that he brandished a gun.  (Traverse at 37.)

16 Petitioner is not entitled to habeas relief on this claim because he fails to
17 demonstrate that the instruction on admissions by itself so infected the entire trial that the
18 resulting conviction violates due process.  *See Estelle*, 502 U.S. at 71-72.

19 **III.    *Miranda* Claim**

20 Petitioner also claims that his rights under *Miranda* were violated on the night that
21 Officer Albalos arrested him.  Specifically, Petitioner argues that he was in custody once
22 Officer Albalos confronted him with evidence that a witness saw him holding a gun, and
23 he was not read his *Miranda* rights at that time.  (Traverse at 49.)  Petitioner contends that
24 as a result, his statement to Officer Albalos that he brandished a gun-shaped cigarette
25 lighter should not have been admitted.  (Traverse at 49-50.)

26 *Miranda* requires that a person subjected to custodial interrogation be advised that

8

he has the right to remain silent, that statements made can be used against him, that he has the right to counsel, and that he has the right to have counsel appointed. *See Miranda v. Arizona*, 384 U.S. 436, 444 (1966). These warnings must precede any custodial interrogation, which occurs whenever law enforcement officers question a person after taking that person into custody or otherwise significantly deprive a person of freedom of action. *Id*. *Miranda* protections are triggered "'only where there has been such a restriction on a person's freedom as to render him 'in custody.''" *Stansbury v. California*, 511 U.S. 318, 322 (1994) (*Oregon v. Mathiason*, 429 U.S. 492, 495 (1977)). "[I]n custody" requires that "a reasonable person have felt he or she was not at liberty to terminate the interrogation and leave," as judged by the totality of the circumstances. *Thompson v. Keohane*, 516 U.S. 99, 112 (1995). Habeas relief should be granted if the admission of statements in violation of *Miranda* "had a substantial and injurious effect or influence in determining the jury's verdict." *Juan H. v. Allen*, 408 F.3d 1262, 1271 (9th Cir. 2005).

The superior court held that Petitioner was not in-custody at the time that he told Officer Albalos that he brandished a cigarette lighter because "there is no indication that Officer Albalos objectively manifested her intent to arrest petitioner until she officially placed him under arrest approximately thirty minutes after the questioning at issue." (Ex. I at 3-4.)

Petitioner makes a number of allegations in his traverse about the circumstances of this statement that are not reflected in the record. He alleges that after Officer Albalos confronted him with evidence that a witness saw him with a gun, she repeatedly asked Petitioner about the location of the gun. (Traverse at 43.) Petitioner repeatedly responded that he did not have a gun. (*Id*.) Petitioner further alleges that Officer Albalos threatened to "trash" the liquor store and his house to look for the gun. (*Id*.) Petitioner then told Officer Albalos that he did not use a real gun, rather he used a cigarette lighter

9

shaped like a gun. (*Id.*; Ex. B at 293-94.)  After conducting a search of the liquor store, Officer Albalos left to respond to another emergency. (Ex. B at 296).  According to Petitioner, before leaving Officer Albalos stated, "don't go anywhere.  Don't leave this store!  I will be right back because I want to talk to you some more." (Traverse at 44.) Petitioner also argues that Officer Albalos took his identification card when she left. (*Id.*)

Even if Petitioner could prove that these allegations are true, and could successfully demonstrate that he was in custody at the time that he told Officer Albalos that he brandished a gun-shaped cigarette lighter, he cannot show prejudice from the admission of this statement into evidence.  Rather, Petitioner's statement to Officer Albalos that he brandished a cigarette lighter was consistent with his defense theory at trial.  The fact that Petitioner's account did not waver since the night of the incident only bolsters his credibility.  As Petitioner was not prejudiced by the admission of his statement into evidence, he is not entitled to relief on his *Miranda* claim.

## IV.     **Ineffective Assistance of Counsel Claims**

Petitioner contends that his trial counsel was ineffective in not advocating for a limiting jury instruction, not requesting instructions on self defense or defense of others, and not moving to suppress pre-trial statements to police on *Miranda* grounds.  Petitioner also asserts that appellate counsel was ineffective in not raising a claim that his statement to Officer Albalos was obtained in violation of *Miranda* and in not raising a claim that his trial counsel was ineffective.

### A.     **Trial Counsel**

In order to prevail on a Sixth Amendment ineffectiveness of counsel claim, Petitioner must show: first, that counsel's performance was deficient, i.e., that it fell below an "objective standard of reasonableness" under prevailing professional norms. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984).  Second, he must establish that he was prejudiced by counsel's deficient performance, i.e., that "there is a reasonable

10

1  probability that, but for counsel's unprofessional errors, the result of the proceeding
2  would have been different." *Id.* at 694.  A reasonable probability is defined as a
3  probability sufficient to undermine confidence in the outcome. *Id.*  Judicial scrutiny of
4  counsel's performance must be highly deferential, and a court must indulge a strong
5  presumption that counsel's conduct falls within the wide range of reasonable professional
6  assistance. *Id.* at 689.  A difference of opinion as to trial tactics does not constitute denial
7  of effective assistance. *United States v. Mayo*, 646 F.2d 369, 375 (9th Cir. 1981), and
8  tactical decisions are not ineffective assistance simply because in retrospect better tactics
9  are known to have been available. *Bashor v. Risley*, 730 F.2d 1228, 1241 (9th Cir. 1984).

   Petitioner argues that his counsel was ineffective in failing to seek a limiting instruction regarding the two teenage witnesses who testified that they had given inconsistent accounts of the incident because they felt threatened.  One witness, Joseph Mantione, originally testified that Petitioner brandished a cigarette lighter, and at trial testified that Petitioner brandished a firearm. (Ex. B at 92.)   Mantione testified at trial that he perjured himself because he was afraid that his family might be harmed, although he conceded that he was never threatened, and because his friend told him that he could get free alcohol if he sided with Petitioner. (Ex. B at 92-93, 110.)  Witness Roger Mills originally testified that he heard fireworks on the night of the incident and not a gunshot, and at trial testified that he heard a gunshot. (Ex. B at 147.)  Mills testified that he perjured himself because he heard that "somebody" had his address and phone number and he was scared. (*Id.*)  Petitioner contends that the jurors should have been instructed to consider Mantione's and Mills' testimony only for the purpose of assessing the witnesses' credibility and not for its substance.  Petitioner argues that the jury may have relied on Mantione's and Mills' testimony as evidence that Petitioner threatened the witnesses or "as a reason to punish [Petitioner] regardless of his guilt." (Traverse at 60.)

   In denying this claim, the state court reasoned that "'[c]ounsel could reasonably

11

have concluded such an instruction would have emphasized in the jurors' minds a characterization of defendant [the defense] was trying to avoid'-that defendant might have tried to intimidate the witnesses. *Dhanowa*, 2007 WL 927782 at *3 (citing *People v. Benavides* 35 Cal.4th 69, 94 (2005)). The appellate court also reasoned that the witnesses made only fleeting references to feeling threatened about giving a true account of their observations of the incident, and did not implicate defendant. *Id*.

The appellate court decision was reasonable. Petitioner asserts that the trial record demonstrates that the references to the witnesses feeling threatened are not fleeting. To support his claim, Petitioner points to the testimony of Mantione, Mills, and the closing statement of the prosecutor. However, a review of the record indicates that the references were fleeting at best. At no point did Mantione or Mills say that they had actually been threatened or felt threatened by Petitioner, only that they felt threatened generally, and they only said that once during the trial. Additionally, the prosecutor argued at one point in his closing statement that the teenagers changed their stories because they felt scared because they were kids and because they heard through the grapevine that their families might be hurt. (*Id*. at 467-469.) This point was not emphasized by the prosecutor, nor was it argued as a basis for Petitioner's guilt. Moreover, at no point did the prosecutor argue that Mills and Mantione were actually threatened. As the state court articulated, there was a valid tactical reason for not pursuing a limiting instruction, i.e., that it might draw additional attention to the tangential issue that the teenagers felt threatened.

Petitioner fails to show that the references to the witnesses' feeling threatened were sufficiently prominent that the attorney's failure to request a limiting instruction was not objectively reasonable. Moreover, it is unlikely that Petitioner's case was prejudiced by the lack of a limiting instruction because the teenagers' testimony at trial was corroborated by the testimony of four other prosecution witnesses. Counsel was not ineffective on this ground.

Petitioner's argument that his trial counsel was ineffective in failing to request an instruction regarding self-defense and defense of others also fails. In denying this claim, the California Court of Appeal reasoned:

> [T]here are a number of reasons that counsel might not have pursued that course. Defendant may have insisted on it. Or counsel could have concluded that presenting alternative defenses would prejudice defendant before the jury. Or an investigation that was reasonable under prevailing professional norms (*Wiggins v. Smith* (2003) 539 U.S. 510, 521-522) might have disclosed that nothing in the teenagers' conduct legally justified a response with deadly force. On this record, we can find no ineffective assistance underlying the defense that counsel presented on defendant's behalf to the exclusion of other possible defenses.

*Dhanowa*, 2007 WL 927782 at *3. As discussed above, a self-defense or defense of others jury instruction would have been contrary to Petitioner's theory of the case: that Petitioner did not brandish a firearm, he brandished a gun shaped cigarette lighter. Moreover, the evidence in the record does not support an instruction on self-defense or defense of others. The evidence that a group of intoxicated teenagers threw "Pop Rocks" at Petitioner was not sufficient because brandishing and firing a gun to defend against Pop Rocks would warrant a finding of self-defense or defense of others. Even if a firecracker was thrown at Petitioner as he contends, this would still not warrant shooting a firearm in the presence of a group of teenagers. Thus, his attorney could reasonably have decided not to pursue the defenses of self-defense and defense of others or to ask for instructions on those theories.

Petitioner also contends that trial counsel was ineffective in failing to move to suppress his pre-trial statement to Officer Albalos on the grounds that his *Miranda* rights were violated. The trial attorney may have decided not to move to suppress the statement because it demonstrates that Petitioner has consistently stated that he brandished a cigarette lighter rather than a firearm. As discussed above, Petitioner's statement to Officer Albalos was consistent with his defense at trial, and was not incriminating. Counsel could reasonably have decided not to attempt to suppress a statement that was favorable as it showed that Petitioner had consistently maintained the same account of the

13

incident.

Petitioner's right to effective assistance of counsel was not violated, so the rejections of these claims by the state courts were not contrary to, or an unreasonable application of, clearly-established Supreme Court authority.

### B.     Appellate Counsel

Petitioner asserts that appellate counsel was ineffective in failing to raise a claim that his statement to Officer Albalos was obtained in violation of *Miranda*. Petitioner also argues that his appellate counsel was ineffective by not raising a claim that his trial counsel was ineffective.

Appellate counsel does not have a constitutional duty to raise every nonfrivolous issue requested by defendant. *Jones v. Barnes*, 463 U.S. 745, 751-54 (1983); *Gerlaugh v. Stewart*, 129 F.3d 1027, 1045 (9th Cir. 1997); *Miller v. Keeney*, 882 F.2d 1428, 1434 n.10 (9th Cir. 1989). The weeding out of weaker issues is widely recognized as one of the hallmarks of effective appellate advocacy. *Miller*, 882 F.2d at 1434. Appellate counsel therefore will frequently remain above an objective standard of competence and have caused his client no prejudice for the same reason -- because he or she declined to raise a weak issue. *Id.*

As discussed above, the claims regarding a *Miranda* violation and ineffective assistance of trial counsel are without merit, so counsel's failure to raise them on appeal was not ineffective. Because counsel was not ineffective, the state courts' rejections of these ineffective assistance claims were not contrary to, or an unreasonable application of, clearly-established Supreme Court authority.

### **CONCLUSION**

After a careful review of the record and pertinent law, the petition for writ of habeas corpus is DENIED.

A certificate of appealability will not issue. *See* 28 U.S.C. § 2253(c). This is not a

1  case in which "reasonable jurists would find the district court's assessment of the

2  constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

3  The Clerk shall enter judgment in favor of Respondent and close the file.

4  IT IS SO ORDERED.

5  DATED: November 29, 2010

6

7  JEFFREY S. WHITE
United States District Judge

8

9

UNITED STATES DISTRICT COURT

FOR THE

NORTHERN DISTRICT OF CALIFORNIA

AMARJIT DHANOWA,

Plaintiff,

v.

JOHN MARSHALL et al,

Defendant.

Case Number: CV09-01280 JSW

**CERTIFICATE OF SERVICE**

I, the undersigned, hereby certify that I am an employee in the Office of the Clerk, U.S. District Court, Northern District of California.

That on November 29, 2010, I SERVED a true and correct copy(ies) of the attached, by placing said copy(ies) in a postage paid envelope addressed to the person(s) hereinafter listed, by depositing said envelope in the U.S. Mail, or by placing said copy(ies) into an inter-office delivery receptacle located in the Clerk's office.

Amarjit Dhanowa
F10310
San Quentin State Prison
San Quentin, CA 94974

Dated: November 29, 2010

                              Richard W. Wieking, Clerk
                              By: Jennifer Ottolini, Deputy Clerk